**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | NO. 12-236 |
| | : | |
| **TIMOTHY MCGEE** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                                                **July 24, 2013**

Following the jury's verdict finding him guilty of securities fraud[1] and perjury,[2] defendant Timothy McGee moved for judgment of acquittal or, in the alternative, a new trial. We denied his motion and now explain why.

The trial evidence, viewed in favor of the government, was that McGee obtained information from an insider that Philadelphia Consolidated Holding Company ("PHLY") was about to be purchased by another company for a price three times book value. McGee used the non-public information to trade in the company's stock, which resulted in a substantial profit.[3] He contests both that the information was obtained from a source to whom he owed a duty of trust and confidence and that it was disclosed during a conversation subject to such a duty. Essentially, he reasserts his argument, which we rejected in ruling on his motion to dismiss the indictment, that there was no confidential relationship essential to an insider trading offense based upon the misappropriation theory

---

[1] 15 U.S.C. §§ 78j(b) and 78ff.

[2] 18 U.S.C. § 1621.

[3] A detailed description of the factual context is recited in our memorandum opinions denying the motion to dismiss the indictment, *United States v. McGee*, 892 F. Supp. 2d 726 (E.D. Pa. 2012), and the motion to dismiss the complaint in the civil action, *SEC v. McGee*, 895 F. Supp. 2d 669 (E.D. Pa. 2012).

of liability enunciated in *United States v. O'Hagan*, 521 U.S. 642 (1997).[4]

## Motion for Judgment of Acquittal

*Securities Fraud Count*

In ruling on McGee's motion to dismiss the indictment, we held that a duty could arise from a relationship of trust and confidence, an agreement, or a history and pattern of sharing confidences. *United States v. McGee*, 892 F. Supp. 2d 726, 730 (E.D. Pa. 2012). We shall not revisit that holding. Now, we must determine whether the evidence adduced at trial was sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002).

In analyzing the evidence, we view it in the light most favorable to the government. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). We are not free to substitute our own determination of the facts and judgment for the jury's. *See United States. v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (citation omitted); *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

McGee argues that the government failed to prove an essential element of insider securities fraud under the misappropriation theory – that he owed a duty of trust and confidence to the insider who provided the information to him. He contends that his relationship with the insider was confined to interacting in the context of their membership and participation in Alcoholics Anonymous ("AA"). McGee characterizes whatever

---

[4]The prosecution proceeded on the misappropriation theory of liability. Unlike the traditional theory, which targets the corporate insider, the misappropriation theory holds an outsider liable for using non-public information obtained from an insider to whom the outsider owed a duty of loyalty and confidentiality. *United States v. O'Hagan*, 521 U.S. 642, 651-52 (1997). Under this latter theory, liability is premised upon the outsider deceiving the insider, breaching his duty of loyalty and confidentiality to that person. *Id.* at 652. Deception occurs when the confidant fails to disclose to the source that he intends to rely on the non-public information to trade in the securities and/or share the information with others. *Id.*

confidentiality there was as unilaterally imposed by the insider and not one that he recognized as existing. He stresses the absence of a business relationship as if that is the only type of relationship that could have engendered the requisite duty of trust and confidence.

Following the Supreme Court's approval of the misappropriation theory in *O'Hagan*, the SEC promulgated Rule 10b5-2, 17 C.F.R. § 240.10b5-2, to clarify the types of relationships giving rise to a duty of trust or confidence.[5] Selective Disclosure and Insider Trading, 64 Fed. Reg. 72590, 72602 (Dec. 28, 1999). The Rule codified a non-exhaustive list of "duties of trust or confidence," the breach of which can form the basis of liability under the misappropriation theory. The duty arises where there is an agreement to keep the information confidential, 17 C.F.R. § 240.10b5-2(b)(1); when the parties of the communication have "a history, pattern, or practice of sharing confidences, such that the recipient of the information knows or reasonably should know that the person communicating the material non-public information expects that the recipient will maintain its confidentiality," *id.* at § 240.10b5-2(b)(2); or where the information is shared with a spouse, a parent, child, or sibling. *Id.* at § 240.10b5-2(b)(3).

McGee contends that the government failed to prove that he and the insider shared a relationship of trust or confidence as defined by Rule 10b5-2(b)(1) and (2), and that the information about the merger was disclosed within the scope of any such relationship. McGee is correct that the essential duty cannot arise out of a mere social relationship or

---

[5] As we explained in our memorandum opinion denying the motion to dismiss the indictment, the SEC did not exceed its rulemaking authority in defining the requisite relationship in Rule 10b5-2. *United States v. McGee*, 892 F. Supp. 2d at 731-34. The SEC promulgated the Rule in the exercise of its authority granted by Congress. Because the Rule was neither arbitrary nor capricious, nor manifestly contrary to the statute, it is entitled to *Chevron* deference. *Id.* at 734.

3

friendship. As we instructed the jury, "the nature of the relationship must be one of trust and confidence. A duty of trust and confidence can exist where the parties to the communication have a history, pattern or practice of sharing confidences, such that the recipient of the information knows or reasonably should know that the person communicating the material non-public information expects that the recipient will maintain its confidentiality."[6]

McGee is not correct that the evidence failed to establish a relationship that went beyond a social one. There was sufficient evidence from which a rational fact finder could have found that a confidential relationship existed and the inside information was disclosed within the confines of that relationship.

In his reply memorandum, McGee argues that there was no evidence that the relationship "involved the exchange of business confidences or, at any point, went beyond confidences relating to sobriety."[7] There is no question that there was no business or working relationship between McGee and the insider. Nor was there an express agreement.[8] But, there was a relationship of sharing confidences that developed through their joint struggle with alcohol and their participation in the AA program. McGee's

---

[6] 11/15/12 Tr. 70:17-24. *See* 17 C.F.R. § 240.10b5-2(b)(2); *United States v. Rajaratnam*, __ F.3d __, No. 11-4416, 2013 WL 3155848, at *13 n.23 (2d Cir. June 24, 2013); *SEC v. Yun*, 327 F.3d 1263, 1273 and n.23 (11th Cir. 2003) (holding that "the existence of a duty of loyalty and confidentiality turn[ed] on whether [the insider-husband] granted his [allegedly misappropriating-wife] access to confidential information in reasonable reliance on a promise that she would safeguard the information"); *United States v. Falcone*, 257 F.3d 226, 234 (2d Cir. 2001) (noting that an "explicit acceptance of a duty of confidentiality" could form the basis of the functional equivalent to a fiduciary relationship); *SEC v. Kirch*, 263 F. Supp. 2d 1144, 1147, 1151 (N.D. Ill. 2003) (finding the existence of a fiduciary-like relationship and attendant duty where the defendant traded on nonpublic information he gleaned as a member of a business roundtable, which had an express policy and understanding that such matters were to be kept confidential).

[7] Def.'s Reply at 1.

[8] Even though there has been much discussion by the parties of the AA saying that "everything said here stays here" and the AA emphasis on anonymity, the government does not contend that the duty of trust and confidence rests upon an express agreement. 11/13/12 Tr. 229:8-13.

4

relationship with the insider grew in AA. It was developed through the communications he and the insider continued to have as their relationship grew. The insider described and telephone records tended to corroborate how he depended on McGee, who had many years of sobriety.

It was during the course of a conversation about sobriety after an AA meeting that the insider mentioned that the pending merger was causing him stress. In response to McGee's question about why the insider was relapsing, the insider talked about the pending sale of the company for three times book value as creating pressure.[9] Thus, a jury could reasonably conclude that this was a confidence disclosed during the insider's discussion about his sobriety.

Alcoholics Anonymous was at the core of the relationship. It is where McGee and the insider first met and where they continued to relate to each other. Although they participated in the same athletic events and shared a group ski trip, they did not socialize. When they saw each other at AA meetings, they would talk afterwards about the program. During these conversations, they shared their experiences and stressors in an effort to maintain sobriety.[10] It was in the context of such a conversation that the insider revealed the stress he was experiencing while dealing with a merger of his company with another.

The insider characterized his relationship with McGee as no different than with any other AA member. It was not social. It was based on the AA program and meetings. "I see them [AA members] at the meeting. I may have conversations with them, I'm

---

[9] 11/13/12 Tr. 72:15-24.

[10] 11/15/12 Tr. 5:13-6:11.

connected with them. . . ."[11]

According to the insider, whose testimony the jury was free to accept or reject, McGee assured him that he could be trusted. He also testified that the AA program emphasized confidentiality and encouraged members to be truthful in discussions with fellow members. Members were urged to seek advice from members having longer tenure in the program.

McGee's argument compartmentalizes the conversation. He contends that the part of the discussion of the pending merger was about a business matter that did not fall within the ambit of the expected confidentiality. Standing alone, the merger talk could be construed as involving a business matter. However, it was part of a larger discussion about the insider's struggle with maintaining his sobriety. A reasonable jury could conclude that the merger talk was part of the alcohol-related conversation. It was, according to the insider, the cause of his stress. Contrary to McGee's argument, the jury could have reasonably found that the insider was talking about his sobriety. Thus, because sufficient evidence supported the jury's conclusion that the insider's revealing the merger fell within the scope of confidentiality, McGee's motion for judgment of acquittal on the securities fraud count was denied.

*Perjury Count*

McGee claims that his perjury conviction cannot stand alone on the testimony of the insider. He argues that the evidence that he had material non-public information, which he denied having had when questioned under oath by the SEC, came only from the insider's testimony. In summary, he contends the conviction is barred by the two-witness

---

[11] 11/13/12 Tr. 129:24-130:1.

6

rule.

A conviction for perjury cannot rest on the uncorroborated testimony of a single witness. *Weiler v. United States*, 323 U.S. 606, 607 (1945). Typically, two witnesses are necessary to prove that the defendant lied under oath. However, a single witness and corroborating non-testimonial evidence may satisfy the two-witness rule. *United States v. Neff*, 212 F.2d 297, 306 (3d Cir. 1954); *United States v. Stewart*, 433 F.3d 273, 315 (2d Cir. 2006). The corroborating evidence must be independent of the testimony of the single witness and inconsistent with the innocence of the defendant. *Neff*, 212 F.2d at 307. The independent corroborating evidence must be trustworthy enough to convince the jury that what the witness said was true. *Weiler*, 323 U.S. at 610. Thus, perjury may be established beyond a reasonable doubt when there is direct testimony from one witness and corroborating independent evidence.

McGee, through a witness with whom he worked, explained his buying the PHLY stock as part of an "averaging down" strategy.[12] The jury obviously rejected that argument. The records of McGee's stock trades corroborated the insider's testimony and contradicted McGee's "averaging down" explanation. Those records revealed the timing and the quantity of the trades in the PHLY stock. On June 30, 2008, PHLY stock represented one-tenth of McGee's stock portfolio.[13] Less than a month later, it constituted 60% of his holdings.[14] In the interim period, McGee made the following purchases: July 15, 2008,

---

[12] A strategy of "averaging down" occurs when an investor, out of belief that a stock is undervalued, buys additional stock at a price lower than the initial investment, which reduces the average price per share of the total investment.

[13] Gov't Ex. 502.

[14] Gov't Ex. 501.

7

1,000 shares at $33 per share; July 17, 2008, 8,250 shares at $33 per share; July 18, 2008, 1,000 shares at $34 per share; and July 22, 2008, 500 shares at $35 per share.[15] On July 23, 2008, after the announcement of the sale, the stock price rose to $58 per share.[16]

The jury also had evidence that raised an inference that McGee was acting as if on a sure thing. To finance his purchase of the 8,250 shares on July 17, 2008, he borrowed approximately $226,000, at 6.875% interest.[17]

The unusual timing and the large number of the shares purchased within a three-week period of time when compared to his previous holdings in PHLY stock, and the significant loan he took to purchase the stock is corroborative evidence that McGee had been tipped about the pending merger. It validated the insider's testimony. It did not matter that McGee had obtained this information during the scope of any duty of confidentiality for purposes of the perjury charge. Even if the jury found that he had not violated any duty of confidentiality, it still could have found, as it did, that McGee was not truthful when asked if he had inside material non-public information when he traded in the stock.

Although the questions cited in the second specification of the perjury count are imprecise, they were not so ambiguous that McGee could justify his answers as literally truthful. Indeed, he was asked specifically if he had gotten any type of information that would suggest that the company was going to be purchased during his interactions with the

---

[15] Gov't Ex. 503.

[16] Gov't Ex. 501.

[17] Gov't Ex. 501.

insider. He expressly denied it, stating that he "knew nothing" about the pending sale of PHLY. The insider's testimony and the record of McGee's stock trades were sufficient to establish that his response was false.

There was ample evidence to support the jury's guilty verdict on the perjury count. Hence, we denied the motion for judgment of acquittal on the perjury count.

## Motion for New Trial

McGee supplements his motion by referring to deposition testimony given in the parallel civil proceeding, *SEC v. McGee, et al.*, Civil Action No. 12-1296, which he argues is new evidence entitling him to a new trial. The testimony he relies upon is that of the insider's current AA sponsor, who disavowed any confidentiality obligation imposed on AA members; and two family members and co-workers at PHLY, who minimized the insider's role in the merger process.

Newly discovered evidence will justify granting a new trial only if the defendant shows that (1) the evidence was discovered after trial; (2) he moved diligently to discover it; (3) the evidence is not merely cumulative or impeaching; (4) it is material; and (5) it would probably produce an acquittal. *United States v. Adams*, 759 F.2d 1099, 1108 (3d Cir. 1985). The movant carries the "heavy burden" of proving each of the elements. *United States v. Kelly*, 539 F.3d 172, 182 (3d Cir. 2008) (quoting *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006)). If any one of the five elements is not satisfied, the motion fails. *Id.* (citing *United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002)).

Contrary to McGee's assertion, the sponsor, S.D., did not state that confidentiality is not expected. What he said was that some members do not follow the admonition to keep what is said confidential and tend to "gossip." Summing up, S.D. testified "so is

9

[confidentiality] followed to the law, no." The clear implication of this response is that there is an expectation of confidentiality, but it is sometimes violated.

No matter how his testimony is interpreted, S.D. gave his personal opinion and perspective of AA. He was not describing what AA requires or suggests. Instead, he related his personal view, which was not to trust anyone in the program. He did not actually add anything to what McGee's witness Charles Glackin had already testified at trial. Furthermore, there is no explanation why S.D. was not called at trial or why, if at all, the defense did not "discover" this until after trial.

As to the family members with whom the insider worked, their deposition testimony does not help McGee. Even assessed in his favor, the testimony does not support the conclusion that the insider had nothing to do in the merger process. At best, it characterizes the insider's work on the merger as something less than what the insider said it was at trial. But, according to his co-workers, the insider did have a part in preparing the merger package. Nevertheless, even if he had no role in the process, the insider still imparted the information to McGee who used it.

In any event, whether the insider had a large or small role to play in the merger does not mean that he was not stressed by the pending transaction. He still talked about it in the context of his discussion with McGee about what was causing him to relapse.

There are no grounds for granting a new trial. The proffered supplemental evidence does not constitute newly discovered evidence warranting a new trial. Accordingly, we denied McGee's motion for one.